Case number 319-0339. In re Marriage of Darren Kruss Appellee and Sylvia Kruss Appellant. Mr. Craddock, are you ready? Yes, yes. May it please the Court, my name is Jason Craddock. I am representing the appellant, in this case Sylvia Kruss. And the Court has asked us to address the issue of jurisdiction. And so I'll begin by stating there is jurisdiction, this Court does have jurisdiction over this appeal. Because it's very clear from the transcripts, the hearing transcripts involved. And the judge wanted this Court to take this matter up. And we've attached the transcripts in our appendix and we've quoted from them extensively. The trial judge had stated many times on two different dates. That they wanted this Court, the appellate Court to hear this matter. Is there a Supreme Court rule that covers that? Yeah, it is 304A. Unfortunately, the trial court cited 304B, which I believe was a mistake. But the judge's statements make it very clear that this was to be a final and appealable order under Supreme Court rule 304. And like the case we cited in the DuPage County Collector, which was an Illinois Supreme Court case. It isn't necessary to have enforcement language in the appeal when there's nothing to enforce. In this case, there was nothing to enforce. We had objected to the judge's quashing of subpoenas for victim sensitive interviews. And the court on January 15th and also on March 27th of 2019 said, take this to the appellate court. This is my order. Quashing the subpoenas is final and appealable. I believe it would be formal for substance simply to hold the judge to mistakenly citing 304B instead of 304A and to deny jurisdiction. And even further, by denying jurisdiction, my client can get no relief at all. She can't. The trial court won't take the matter up. And if this court doesn't take it, she has nowhere to go. And so in light of what's in the record at pages 3161 through 3166, we believe it's clear that the trial court was conferring jurisdiction upon this court to hear this matter. Our second argument in this regard is that the Will County State's attorney does not have standing to be involved in this case because he was appearing in a private divorce case. By the way, the state's attorney's office, they're attorneys for Will County, and they're appearing in this case on behalf of employees of a 501C3 nonprofit organization. And this goes against IRS regulations and is a conflict of interest because the state or municipality cannot qualify for exemption under 501C3. We cited the integral part test from the IRS regulation, which is noted in our brief. It's IRS regulation Rule 60-384, 1960-2, CB 172. This sets forth a test to see whether an entity is an integral part of the local government. And the sixth part of that test says whether the organization uses government employees to conduct its activities. While this is not true for the Will County Child Advocacy Center, it is true for the state's attorney, which is our main argument for why the Will County State's attorney should not have gotten involved in this case. If the Will County Child Advocacy Center employees wanted to quash the subpoena, they would have had to hire other counsel. Indeed, the appearance of the Will County State's attorney in a private... You're saying the Will County Child Advocacy Center is not Will County, right? It's not a government entity, as far as I'm aware. It's a nonprofit. So it's like Will County Auto Sales, right? Correct. The state's attorney doesn't have an obligation, duty, rather, to represent because it's not a unit of local government? Correct. Again, we later on bring in an argument of violation of due process, of bias. We believe this fits the picture with the Will County State's attorney, who is a criminal prosecutor, showing up in a private divorce case on behalf of employees he doesn't have standing to represent, quashing subpoenas that my client is trying to get to protect her daughter from abuse. And again, we believe this is one other reason that the order quashing the subpoenas should be overturned. This argument, as we pointed out in our reply brief, this argument was not waived because we would say it's plain error. The IRS regulations are what they are. 501c3 status is what it is, and this argument was not waived. In fact, we did object to the quashing of the subpoenas many times on the record. And the previous counsel did also object to Mr. Meyer's presence in the courtroom and also in the case at page R45 in the record, and also at R107 and R174. We next are arguing that due process was violated, and this goes beyond the issue on appeal, which is the quashing of the subpoenas for the victim-sensitive interviews. There was no evidentiary hearings from the very beginning. Even when the case was in DuPage County, the child was removed from my client's custody, placed with the father, after the child had reported sexual abuse. And there was never an evidentiary hearing. The child never got her day in court. The mother never got her day in court with respect to this issue. There was never an in-camera interview with the child. It was simply the guardian ad litem at the time saying that because my client reported what the child told her about her father, that she should be removed and placed with the father. And she was. And then visitation couldn't even happen unless there was a therapist. And in the record, we've pointed out the therapists were in effect scared off by the father. And so when they couldn't be involved, my client could not get visitation and has not had visitation for now going on two years. And every time we've tried to raise the issue or have an evidentiary hearing, it's been blocked. It was blocked most prominently by the quashing of these subpoenas, which is why we're here. Because the judge said, I'm quashing the subpoenas. This is final and appealable. Get out of my court. Go to the appellate court. We did try to go to the second district before, and they found that there was no jurisdiction at that time. But again, my client is left with nowhere to go. And this denies her of due process. Without an evidentiary hearing, she's had her child alienated from her for many years. And the Stanley versus Illinois case makes it very clear a child cannot or a parent cannot have their basic rights to their children removed without an evidentiary hearing. And that's exactly what's happened. The court has never done an in-camera interview, as I've stated before, has never wanted to even look into what took place in DuPage County where the child was first removed with no evidentiary hearing. As far as the quashing of the subpoenas. We cited a case of. Where's the case. Sorry, I lost my page. We've cited a case Erica M versus Christopher M in our brief on page 11. This case makes it clear that statements made by a child relating to allegations of abuse shall be admissible in evidence in a hearing concerning allocation of parental responsibilities. And even the abuse neglected Child Reporting Act. Says the person having legal responsibility for a child or a parent. Actually, it says it straight out a parent shall have access to these records. Further into purposes directly connected with the administration of the act. And the act of the point of the act is to protect abuse children and to get the reports of abuse put before the court so that the court can act on them and protect the child. And that's precisely what has never happened in this case. The, these, these interviews were conducted the child. Was very open about the abuse which took place, but the courts have quashed the subpoenas have even blocked my client even from getting some of the reports and has refused to do in camera interviews. So this there's no way for this child to Get any relief from from the court for for the abuse. She suffered. And even even the the child abuse child reporting neglect abuse and neglect child reporting act also states. Access to records that necessary for the determination of an issue before the court shall be limited in camera inspection, unless the court determines public public disclosure of the information is necessary for resolution of an issue. This case, the court has done neither. And again, this is this is why we're here. Finally, I'll just briefly point out the I'm not sure what I didn't see what the lights with light. I'm on yet, but There was a there was requests for sanctions in this case. Obviously, we would we would oppose any sanctions for the primary reason we We brought this in good faith. We're simply trying to protect a child from abuse. For this mother and her child to get their day in court. Again, we relied on the language of the judge in two different court hearings where she was emphatic That this court should address these issues after she quashed the subpoenas and so We would ask We asked that the The question of the subpoenas be reversed. The case be remanded With instructions to To allow for the victim sensitive interviews or for for the judge to review them in camera or however she wants to go about it. And I'll leave it open for questions at this point. I have none. Thank you very much. Mr. Yes, Your Honor. Good morning, Your Honor's counsel. May I please the court just procedurally. I'm going to be taking 10 minutes. If your honors will allow it. And then Mr. Myers from the state's attorney will be taking the remaining five on behalf of the police. Hearing what Mr. Craddock said. I think it's important for this court to focus on what this case is and is not about This is not an appeal from a judgment for dissolution of marriage. This is not an appeal from an order relating to the care custody or allocation of responsibilities of a minor child. This is not an appeal of a termination of miscruises parental rights. This is a routine or an appeal from routine discovery orders entered in post decree dissolution of marriage case, which is anything but routine. The only questions in my mind that are presently before this court are a doesn't have jurisdiction to even consider the interlocutory denial of Intellectual granting of motions to caution be to the extent that it does. Did the trial courts abuse it's considerable discretion and making such a discovery order. Respectfully, this court does not have jurisdiction and the extent that does the trial court did not abuse this discretion and make a discovery order that court made a discovery order. I would argue yes justice, the orders appealed from at least the ones identified in miscruises notice of appeal on January 15 2019 and may 15 2019 are orders quashing subpoenas. My argument be that subpoenas are generally issued in the course of discovery. And I believe we cite cases in our brief that stand for the proposition that these are in fact interlocutory discovery orders, you know, they these orders do not resolve any claim between any party. I'm misunderstanding. How does the court make a discovery order. Did you misstate earlier what you were trying to say. How does the court make a discovery order. Yeah, you were saying the court made a discovery order. That's why I was confused about that. An order in the course of discovery. So, you know, parties file motions to compel a court will say yes, you are required to turn something over or no, you're not. That would be an order in the course of discovery. Okay. You didn't say in the course of discovery. You said discovery. I apologize for not being clear on your honor. Yes, I meant orders entered in the course of discovery. Thank you because I didn't think they made discovery orders. Thank you. Thank you for the correction judge. So yes, this is these are interlocutory orders entered in the course of discovery, which, you know, as a matter of bedrock precedents are not appealable, even with the presence of a valid through a for a finding, because such orders don't conclusively resolve any pending claims. At this point, it's important to note the as Mr credit credit said this is a divorce case. It's a dispute between Sylvia Cruz and Darien Cruz. The will county state's attorney and the will county Children's Advocacy Center are not parties. There are no claims for affirmative relief set forth against either of them. They were simply respondents. In discovery, who, you know, were asked to turn over documents in the course of discovery and objected to those requests. And, you know, as we cited in our brief. You know, the party status as a respondent and discovery does not make them a party. And for that reason, even if the court below gave a proper three or four a finding, which it did not That finding would be ineffective to confer jurisdiction on this court. And the fact of the matter is, if your honors look at the three or four be findings. Contained in the two orders the January 15 and May 15 orders, they simply say this shall constitute a final and appealable order under Supreme Court rule 304 be And as your honors held last year in the Morgan case, a declaration that an order is final and appealable without reference to the justness of delay or even reference to immediate appeal ability events is no application of the discretion of rule 304 a Is not. These are not final and appealable orders under any stretch of these rules and You know, I would add as well that in his brief counsel seems to be challenging a March 27 2019 order with respect to the Lake County State's attorney that order contain no such finding. It was not identified in the notice of appeal. It is not part of the logical progression leading up to the entry of the appeal from orders and it is not properly before this courts. Now, turning to the merits of Miss Cruz's arguments. I'm going to defer to Mr Myers on the question of standing and he will be addressing that but assuming that Miss Cruz has not waived or standing objections, which I believe she has been not raising them below. I don't think there's any question that the trial court below acted properly and within its considerable discretion and quashing these subpoenas It's important to know what was pending before the trial court at the time. In January of last year, January 2019 the arguably only pending pleading before the court was Miss Cruz's amended petition for an order of protection under the domestic violence act. And as she concedes on record page 17 The documents she sought in her first subpoena to the state's attorney were relevant to that pending petition alone. And then between the quashing of her first and second subpoena she filed an emergency motion to modify parenting time under the Illinois marriage and dissolution of marriage act. And in that motion she states that the records are relevant to that motion. Under the abuse and neglected child reporting at ANCRA Neither of these motions provide a basis for the turnover of records which are entitled to a strong statutory presumption against disclosure. The language of section 11.1 a makes it clear that their disclosure of these records are only permitted in limited circumstances quote in furtherance of purposes directly connected with the administration of this act. There's no authority cited in either of Miss Cruz's briefs none presented before the trial court which suggests suggests That proceedings under the domestic violence act or the dissolution of marriage act are directly connected with the administration of this statute. On that basis alone, I believe that the trial court acted within its considerable discretion and denying to turn over these documents and quashing the subpoenas. The next issue that Miss Cruz raises appears to be constitutional in nature and this argument is anything if not muddled She accuses the trial court of violating her due process rights in a variety of ways, most of which have no basis in the record. She cites being handcuffed. I scoured through the record. I couldn't find that anywhere. I believe I would argue that these arguments are waived and assuming that they're not There's been no request for an evidentiary hearing, which is the primary basis of our due process arguments. The fact of the matter, she had an evidentiary hearing on her first motion she Miss Cruz's attorney examined Mr Myers under oath. She simply the record reflects that she requested time to respond to the state's attorneys motion to quash her second subpoena a request which the trial court granted Now the remaining issues that Mr crowd up references are not before this courts. This isn't a question of Miss Cruz's child being taken away from her. These issues are not before this courts. There's, as I said before, this is a limited discovery issue. And I would finally notes. This is the fifth appeal that Miss Cruz has filed in these proceedings. All four proceeding appeals have been dismissed for lack of jurisdiction by the second district and most recently last year by this courts. My client has had to incur thousands of dollars in legal fees defending against each and every one of these frivolous attempts at repellent review. And my fear is that without adequate deterrence in the form of a rule 375 sanction this pattern will continue. Each and every time Miss Cruz is dissatisfied with an order of the trial court. She appeals without any regard for the jurisdiction of this court or the orders appeal ability. And for those reasons, those reasons around us. I would request that this court dismiss this appeal for lack of jurisdiction and impose a meaningful sanction under rule 375 to prevent this from happening again, I will defer the rest of my time to Mr Myers. What would you consider a meaningful sanction. Mr Elster. I would submit that the fees incurred in this matter alone and I'd be happy to provide your honors with a statement of those fees and attached affidavits. Thank you. Myers. Good morning, your honors and please the court, I will finish up with the remaining anchor issues, the abuse neglected child reporting act. I concur with Mr ulcers review of the jurisdictional issue. Well, maybe beneficial to have a determination on this. I don't believe there's jurisdiction. What we have here is a question of legal authority. I think it's the best way to discuss it. Clearly, I think Council for Sylvia acknowledges that the state's attorney's office can represent itself regarding its own subpoenas that were issued to that to the state's attorney. So that doesn't remain an issue. What we do have remaining is the authority to represent the will will county child advocacy center. Now, it was referenced earlier that Mr credit sort of analogized it to will county auto, maybe named will county but it's not necessarily I did. I'm sorry, Justice Holdren, I'm sorry. So that that is an interesting argument, the counter to that is that it's a creature of statute. The county's code establishes the child advocacy center rather than a county or a business saying, Well, I'd like to be called will county because it's where I operate. Not only do they are they established by statute, but they receive, or they can receive portions of the tax levy, and they can receive. They can receive public grants for their operation. That's all under the county code it's section 55 ILCs. Slash eight is the children that are eight. ILCs 80 is the Children's Advocacy Center code. Unlike a private business that wouldn't be found in the county's code. Therefore, are they stepping out of their protection, so to speak, because it appears, and I don't know whether it's a record or not Mr Myers, that they're trying to qualify under the IRS as a 503 was never raised at the, the trial level so it is not part of the record. Based on my own understanding it's related to donations they can receive for the operations. From from understand that but their funding mechanism is is taxpayer funding or government grant money right. Your Honor, I do not I do not have the that answer. It was not part of the record and that's part of the waiver issue is we never, never got to that level because it was not raised. I was not part of the office one that was created the 501 c three. So I do not have the answer for you. I apologize. But initially, very interesting. It is a very interesting issue, but I don't believe the IRS, as I raised in my brief, I don't believe the IRS has the ability to qualify the duties of a state level officer through IRS regulation and we never had argument. This is Mr critics argument as to one factor, but it is a very interesting point of law, Your Honor, and perhaps if this does go back, it would be an interesting argument. But I believe, on the balance, the state's attorney as the legal representation for the county can represent the CAC, it is a governmental agency. Its functions are governmental. So that leaves us with with the the meat of anchor. Which, as Mr Elster pointed out, is the preparatory language is important. Any release must be related to the administration. Of and it's it's central purposes, which is child protection, but anchor is a clear statutory mechanism for dealing with allegations of abuse in response. Sylvia sites two things one a six, which says that a subject report can receive these records. Sylvia is not a subject of the report. She's neither the victim, nor the the perpetrator as defined by anchor and section three. It's clearly defined and chemical decision, the science size that further section eight says for something before court. Sylvia's Sylvia's counsel was asked multiple times what was before the court that the court needed to do an in camera inspection. Sylvia's attorney could not identify that. And in fact, said it didn't matter at record 21. It doesn't matter what for what matter it is, she wants to see the tapes. That's clear that there is no basis for the court to even conduct an in camera inspection because there was nothing before. And with that, that's my red light. Thank you, Mr Myers. Any reply. Yes, to begin, I'd like to address statement. Mr. Actually, both counsel had pointed out. As far as the We did cite authority for this. For this prep for for this proposition. We cited on page 11 of our brief. A statement from the case Erica M versus Christopher M. That. Where it says the section 606.5 of the dissolution act specifically pertains to hearings and addresses hearsay statements made by a child and subsection see which states previous statements made by the child relating to any allegations. The child is an abused and neglected child within the meaning of the abused neglected child reporting act. Shall be skipping down a little shall be admissible in evidence in a hearing concerning allocation of parental responsibilities in accordance with the section 11.1 of the abuse neglected child reporting act. Now, and then so that it's very clear these What what we've subpoenaed Is shall be admissible and evidence. And this was for a hearing concerning allocation of parental responsibilities Sylvia filed a emergency motion to to For parenting to ever to be the responsible. The primary responsible parent And based on these reports of abuse that she received from her daughter. We in turn Subpoena these victim sensitive interviews, the judge question. That that is the lack of evidential of due process or lack of evidentiary meaningful evidentiary hearing That's happened here without without these interviews, there's, there's nothing to present in the way of evidence of the abuse of the child. And so that that that goes to the due process issue as well. As I just briefly as far as the Can't you call the child testify. Can't you do your own deposition. Well, the, the, the judge refused to do an in camera interview of the child as well, or to do an in camera interview Appeal. Well, yeah, this appeal is regarding is regarding these records. So these records, we're saying, based on especially based on the case we've cited Which I just read from and I'm based on the statute on 606.5 of the Dissolution Act, we're saying the these these victim sensitive interviews are are admissible and and We submit are necessary as well. For the to determine the allocation of parental responsibilities in this case, which, which was the motion that was pending before the court. And I want to briefly touch on the issue of the Will County Child Advocacy Center and the state's attorneys standing to represent them. Again, It's, it's, it's a matter of Statutory law federal law IRS regulations. The Will County Child Advocacy Center is a nonprofit is a 501 c three They their employees are not involved in government functions, whereas state's attorney's office is clearly a government entity. And we submit that there is a there is an extreme conflict of interest as well as a A lack of standing to represent the child advocacy center. In this regard, the If the court wants to remand on the question of of the funding scheme, as was raised earlier, that would certainly be fine, but we believe this, it's clear. As far as the the statutes are concerned that the statutes layout the status of the Wilk County Child Advocacy Center of this will kind of state's attorney's office and What 501 c threes may do or What government entities may do so I I'm not sure it's necessary but but it would certainly be Certainly be understandable, if it were In conclusion, we would we would urge again that the court remand this matter. Direct the trial court to To allow the subpoenas and And follow the statutes as far as as far as Review of the victim sense of interviews and admissibility of the same. Thank you. Thank you all For your argument today. This matter under advisement. You patch with a written disposition. Thank you, Your Honor. Thank you, Your Honor. Thank you all again. Now, just a short recess.